**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**MARTHA HORTON AND**
**TERRY HORTON** **PLAINTIFFS**

**V.** **CIVIL ACTION NO.** 1:25-CV-112-MPM-DAS

**PRENTISS COUNTY, MISSISSIPPI;**
**SHERIFF RANDY TOLAR; JOEY CLARK;**
**DOUG RAKESTRAW; MOLLIE TAYLOR;**
**JAMIE RINEHART; SEAN NEWCOMB;**
**LISA NEWCOMB; ALEX MITCHELL;**
**AARON MILLER; STEVEN MITCHELL;**
**ELI LANGLEY; JO CAROL KNIGHT;**
**AMANDA PLAXICO; AUSTIN CHITTOM;**
**JERRY BRISTOL; BRAYDEN BALLARD,**
**IN THEIR RESPECTIVE INDIVIDUAL**
**AND OFFICIAL CAPACITIES;** **DEFENDANTS**

---

# COMPLAINT

***Jury Trial Demanded***

---

**COME NOW**, Plaintiffs Martha Horton and Terry Horton and file this *Complaint* against the Defendants to recover actual, compensatory and punitive damages for the Defendants' violations of the Plaintiffs' constitutional rights. The following averments support this civil action:

## PARTIES

1.

Plaintiff Martha Horton is an adult resident citizen of Booneville, Prentiss County, Mississippi.

2.

Plaintiff Terry Horton is an adult resident citizen of Booneville, Prentiss County, Mississippi.

3.

Defendant, Prentiss County, Mississippi, is a political subdivision of the State of Mississippi. The Defendant Prentiss County, Mississippi may be served with process by service upon its Chancery Clerk, Honorable David “Bubba” Pounds, 100 North Main Street, Booneville, Mississippi 38829.

4.

Defendant Sheriff Randy Tolar is the duly elected Sheriff of Prentiss County and may be served with process at 1901-B East Chambers, Booneville, Mississippi 38829. At all material times, Defendant Tolar was the Sheriff of Prentiss County, Mississippi, vested with the responsibility and authority to hire, train, supervise, set, adopt, implement, and enforce policies and procedures at the Prentiss County Jail and to provide protection to the citizens of Prentiss County, Mississippi, and the State of Mississippi, including Plaintiff Martha Horton. Defendant Tolar is sued in his official and individual capacities. Defendant Tolar, at times material hereto, was acting under color of state law in his official capacity as Sheriff of Prentiss County, Mississippi, and the actions of Defendant Tolar were done and performed under the color and pretense of ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

5.

Defendant Joey Clark is the Jail Administrator and Investigator for the Prentiss County Jail and Prentiss County Sheriff’s Department. He may be served with process at 1901-B East

Chambers, Booneville, Mississippi 38829. At all material times, Defendant Clark was the Jail Administrator of the Prentiss County Jail, vested with the responsibility and authority to train, supervise, set, adopt, implement, and enforce policies and procedures at the Prentiss County Jail and to provide protection to the citizens of Prentiss County, Mississippi, and the State of Mississippi, including Plaintiff Martha Horton. Defendant Clark is sued in his official and individual capacities. Defendant Clark, at times material hereto, was acting under color of state law in his official capacity as Jail Administrator of the Prentiss County Jail, Prentiss County, Mississippi, and the actions of Defendant Clark were done and performed under the color and pretense of ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

6.

Defendant Doug Rakestraw is the Deputy Jail Administrator and Investigator for the Prentiss County Jail and Prentiss County Sheriff's Department. He may be served with process at 1901-B East Chambers, Booneville, Mississippi 38829. At all material times, Defendant Rakestraw was the Deputy Jail Administrator of the Prentiss County Jail, vested with the responsibility and authority to train, supervise, set, adopt, implement, and enforce policies and procedures at the Prentiss County Jail and to provide protection to the citizens of Prentiss County, Mississippi, and the State of Mississippi, including Plaintiff Martha Horton. Defendant Rakestraw is sued in his official and individual capacities. Defendant Rakestraw, at times material hereto, was acting under color of state law in his official capacity as Deputy Jail Administrator of the Prentiss County Jail, Prentiss County, Mississippi, and the actions of Defendant Rakestraw were done and performed under the color and pretense of ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

7.

Defendant Mollie Taylor is sued in her individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Taylor can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever she may be found. Defendant Taylor, at all times material hereto, was acting under color of state law in her official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Taylor were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

8.

Defendant Jamie Rinehart is sued in his individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Rinehart can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever he may be found. Defendant Rinehart, at all times material hereto, was acting under color of state law in his official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Rinehart were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

9.

Defendant Sean Newcomb is sued in his individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Newcomb can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever he may be found. Defendant Newcomb, at all times material hereto, was acting under color of state law in his official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Newcomb

were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

10.

Defendant Lisa Newcomb is sued in her individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Newcomb can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever she may be found. Defendant Newcomb, at all times material hereto, was acting under color of state law in her official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Newcomb were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

11.

Defendant Alex Mitchell is sued in his individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Mitchell can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever he may be found. Defendant Mitchell, at all times material hereto, was acting under color of state law in his official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Mitchell were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

12.

Defendant Aaron Miller is sued in his individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Miller can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever he may be found. Defendant Miller, at all times material hereto, was acting under color of state law in his official capacity as a corrections

officer with the Prentiss County Sheriff's Department, and the actions of Defendant Miller were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

13.

Defendant Steven Mitchell is sued in his individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Mitchell can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever he may be found. Defendant Mitchell, at all times material hereto, was acting under color of state law in his official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Mitchell were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

14.

Defendant Eli Langley is sued in his individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Langley can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever he may be found. Defendant Langley, at all times material hereto, was acting under color of state law in his official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Langley were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

15.

Defendant Jo Carol Knight is sued in her individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Knight can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever she may be found. Defendant Knight, at

all times material hereto, was acting under color of state law in her official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Knight were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

16.

Defendant Amanda Plaxico is sued in her individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Plaxico can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever she may be found. Defendant Plaxico, at all times material hereto, was acting under color of state law in her official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Plaxico were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

17.

Defendant Austin Chittom is sued in his individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Chittom can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever he may be found. Defendant Chittom, at all times material hereto, was acting under color of state law in his official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Chittom were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

18.

Defendant Jerry Bristol is sued in his individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Bristol can be served with process at 1901-B East

Chambers, Booneville, Mississippi 38829, or wherever he may be found. Defendant Bristol, at all times material hereto, was acting under color of state law in his official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Bristol were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

19.

Defendant Brayden Ballard is sued in his individual capacity as an employee of the Prentiss County Sheriff's Department. Defendant Ballard can be served with process at 1901-B East Chambers, Booneville, Mississippi 38829, or wherever he may be found. Defendant Ballard, at all times material hereto, was acting under color of state law in his official capacity as a corrections officer with the Prentiss County Sheriff's Department, and the actions of Defendant Ballard were done and performed under the color and pretense of the ordinances, regulations, policies, customs, and usages of Prentiss County, Mississippi and the State of Mississippi.

20.

By reference to the "individual Defendants" the *Complaint* means those persons identified by name.

## JURISDICTION & VENUE

21.

This Court has subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 as this action arises under the laws of the United States, specifically 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3), and the Fourth and Fourteenth Amendments of the United States Constitution.

22.

Venue is proper in the Northern District of Mississippi, pursuant to 28 U.S.C. § 1391, since the Defendants reside in this judicial district, and a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

## FACTS

23.

On or about June 24, 2024, Plaintiff Martha Horton (hereinafter "Martha" or "Martha Horton") was ordered by the Chancery Court of Prentiss County, Mississippi to be detained pending a Commitment Hearing for her mental health.

24.

Earlier that morning, on or near her residential property located in Prentiss County, Mississippi, she was found to be in a severe state of psychiatric illness, and partially, or entirely, unclothed, by deputies with the Prentiss County Sheriff's Department. She was thereafter detained by Prentiss County Sheriff's Department, pursuant to the commitment order, and transported to Baptist Memorial Hospital in Booneville, Mississippi.

25.

Martha was observed at Baptist Memorial Hospital – Booneville at approximately 10:30 a.m. on June 24, 2024, accompanied by employees of the Prentiss County Sheriff's Department. Medical staff noted that all of her vitals were normal, and her physical exam was also normal, aside from the apparent psychiatric symptoms. She was discharged at 2:41 p.m. to the custody of the Prentiss County Sheriff's Department.

26.

Martha was booked into the Prentiss County Adult Detention Center (hereinafter the "Jail") on June 24, 2024, at 4:08 p.m. by Defendant Steven Alex Mitchell and placed into Holding Cell 3.

27.

At the time of her booking, Martha's husband, Plaintiff Terry Horton (hereinafter "Terry Horton"), had filled out a Uniform Commitment Affidavit and a Department of Mental Health Patient Information form, including the Problem Appraisal wherein he indicated that Martha had "Suicidal Thoughts", had "Stop[ped] Taking Medications", and had "Depressed Mood, Inferiority", among other things. Although the Jail was in possession of those documents, none of that medical information was noted in her booking sheet or a medical screening form.

28.

Defendants Sean Newcomb and Lisa Newcomb were also present at the time of booking and were aware, as was Defendant Steven Alex Mitchell, that Martha was being held pursuant to a civil commitment order, that she was experiencing severe psychiatric symptoms, including suicidal ideations and depression, and that she had stopped taking her medications.

29.

On June 25, 2024, Martha was transported to the Corinth Crisis Stabilization Unit ("CCSU") by Defendant Doug Rakestraw. While at CCSU, Martha urinated on herself. The nurse at the CCSU stated that they would not be able to keep Martha at their facility. Defendant Rakestraw then returned Martha to the Jail where she was in his care, along with the care of Defendants Joey Clark, Lisa Newcomb, Steven Wayne Mitchell, Austin Chittom, Steven Alex Mitchell and Sean Newcomb. All of these individual Defendants were aware that CCSU refused to keep Martha, in whole or in part, due to urinary incontinence, yet these individual Defendants

deliberately failed to provide basic hygiene, necessary and adequate medical treatment, a physician to attend to Martha's urinary incontinence, and/or transfer Martha to a medical facility which could provide an appropriate level of care, or any care for that matter.

30.

After being returned to the care of the individual Defendants working on shift at the Jail, Martha was placed in a cell by herself. One, if not the only, cell she was placed in was located in the middle of a long hallway where the individual Defendants, while on shift, walked past innumerable times per day.

31.

From June 24, 2024, through June 26, 2024, the individual Defendants during their respective shifts did, or should have, observed, heard and/or interacted with Martha. Martha showed obvious signs of distress, yet they failed to provide adequate or any medical care or assistance despite knowing that she was severely mentally ill, incontinent, immobile, vomiting, and not eating for days on end, all of which posed substantial risks of serious harm to Martha.

32.

For example, on June 24, 2024, around 7:36 p.m., Defendants Eli Langley and Austin Chittom alleged that Martha was moved to "LL" due to making a mess and beating herself against the wall; however, these individual Defendants deliberately failed to provide basic hygiene, prescription medication, necessary and adequate medical treatment, a physician to attend to Martha, and/or transfer Martha to a medical facility which could provide an appropriate level of care, or any care for that matter. Furthermore, during these individual Defendants shift, they offered no nutrition to Martha. The actions, and/or failures to act, on the part of these individual Defendants were performed knowing they posed a substantial risk of serious harm to Martha.

33.

On June 26, 2024, around 2:57 a.m., Martha allegedly flooded her jail cell and Defendants Eli Langley and Molli Taylor placed a blanket in front of her door and all the water to her cell was cut off. These individual Defendants deliberately failed to provide basic hygiene, prescription medication, necessary and adequate medical treatment, a physician to attend to Martha, and/or transfer Martha to a medical facility which could provide an appropriate level of care, or any care for that matter. Despite Martha having been held at the Jail since the afternoon of June 24, 2024, these individual Defendants offered no nutrition to her. The actions, and/or failures to act, on the part of these individual Defendants were performed knowing they posed a substantial risk of serious harm to Martha.

34.

On June 26, 2024, between 11:30 a.m. and 12:00 p.m., Martha was evaluated at the Jail by the staff at Region IV Menal Health Services. Region IV staff noted, "client was incoherent, unaware of surroundings and naked," her thought process was "unengaged," her "affect" was "flat" and she had no mental insight. As a result of Martha being incoherent and unaware, Region IV staff was unable to obtain any history from Martha but was able to determine, by observation, that Martha was bruised, dirty, and her hair was disheveled. Further, Region IV staff opined that Martha was a present danger to herself and that she had an inability to care for herself. Defendant Jamie Rinehart was present during the evaluation by Region IV and would have, or should have, made the same observations (*i.e.*, incoherent, bruised, dirty, etc.). And, despite Martha having been held at the Jail since the afternoon of June 24, 2024, this individual Defendant offered no nutrition, basic hygiene, necessary and adequate medical treatment, a physician to attend to Martha, and/or transfer Martha to a medical facility which could provide an appropriate level of care, or any care,

to her. The actions, and/or failures to act, on the part of this individual Defendant were performed knowing they posed a substantial risk of serious harm to Martha.

35.

At 4:49 p.m. on June 26, 2024, Martha allegedly refused a supper tray offered by Defendant Aaron Miller. Despite Martha having been held in the jail for over 48 hours and allegedly refusing nutrition, this individual Defendant failed to provide necessary and adequate medical treatment, a physician to attend to Martha, and/or transfer Martha to a medical facility which could provide an appropriate level of care, or any care for that matter. The actions, and/or failures to act, on the part of this individual Defendant were performed knowing they posed a substantial risk of serious harm to Martha.

36.

At 2:30 a.m. on June 27, 2024, Defendant Amanda Plaxico allegedly observed Martha lying on a bed, asking for the light to be turned off and refusing to shower. Despite Martha having been held in the jail since June 24, 2024, and urinating on herself at the CCSU on June 25, 2024, around 9:00 a.m., this was the first time she was offered a shower. Defendant Amanda Plaxico failed to provide basic nutrition, necessary and adequate medical treatment, a physician to attend to Martha, and/or transfer Martha to a medical facility which could provide an appropriate level of care, or any care for that matter. The actions, and/or failures to act, on the part of this individual Defendant were performed knowing they posed a substantial risk of serious harm to Martha.

37.

On June 27, 2024, between 11:10 a.m. and 11:40 a.m., Kellye Garrett, DNP, APMHP, with Region IV, conducted a mental and physical examination of Martha at the Jail and certified that Martha was in "need of observation, diagnosis and treatment. Facts supporting these findings

include: Commitment papers report diagnosed with schizophrenia and bipolar; previous commitments before; hallucinations, delusions, having a manic episode; hasn't slept, anger outburst, emotional. Client did not participate in the assessment. Naked, refusing clothes. Thoughts were disorganized. Speech nonsensical, rambling. Repetitive hand movements. Continues to not sleep. Unable to care for self."

38.

Despite Kellye Garrett's findings, none of the individual Defendants provided basic hygiene, basic nutrition, prescription medication, necessary and adequate medical treatment, a physician to attend to Martha, and/or transfer Martha to a medical facility which could provide an appropriate level of care, or any care for that matter on June 27, 2024. The actions, and/or failures to act, on the part of the individual Defendants were performed knowing they posed a substantial risk of serious harm to Martha.

39.

By the latest of June 28, 2024, Martha was no longer able to ambulate and she laid immobile on the concrete floor of her cell.

40.

On June 29, 2024, around 6:22 p.m., individual Defendants Jamie Rinehart and Brayden K. Ballard, moved Martha back to holding cell 3 after allegedly offered Martha a shower. Despite Martha being incoherent, unaware, dirty, and bruised, these individual Defendants failed to provide basic hygiene, basic nutrition, prescription medication, necessary and adequate medical treatment, a physician to attend to Martha, and/or transfer Martha to a medical facility which could provide an appropriate level of care, or any care for that matter. The actions, and/or failures to act, on the

part of these individual Defendants were performed knowing they posed a substantial risk of serious harm to Martha.

41.

On June 30, 2024 at 7:13 p.m., Martha was allegedly showered by individual Defendants Eli Langley and Jamie Rinehart and her cell was allegedly cleaned for the first time, notwithstanding her urinary incontinence having begun at least by 9:00 a.m. on June 25, 2024 while at CCSU, if not before, and she had remained confined to a cell since 9:00 a.m. on June 25, 2024. Despite Martha being incoherent, unaware, and unable to ambulate, these individual Defendants failed to provide basic nutrition, prescription medication, necessary and adequate medical treatment, a physician to attend to Martha, and/or transfer Martha to a medical facility which could provide an appropriate level of care, or any care for that matter. The actions, and/or failures to act, on the part of these individual Defendants were performed knowing they posed a substantial risk of serious harm to Martha.

42.

Around 10:00 p.m. on June 30, 2024, Defendant Joey Clark called Defendant Jerry Bristol and informed him to "keep a check during the night on Martha Horton" because he "remembered [that] the previous week[,] someone had told [him] that she had been urinating on herself." He "thought by doing extra checks on her it would keep her from getting cold if she happened to urinate on herself again." Despite Martha being incoherent, unaware, and unable to ambulate, these individual Defendants failed to provide basic nutrition, prescription medication, necessary and adequate medical treatment, a physician to attend to Martha, and/or transfer Martha to a medical facility which could provide an appropriate level of care, or any care for that matter. The actions,

and/or failures to act, on the part of these individual Defendants were performed knowing they posed a substantial risk of serious harm to Martha.

43.

From 10:00 p.m. on June 30, 2024, until 11:35 a.m. on July 1, 2024, individual Defendants, Eli Langley, Jamie Rinehart, Jerry Bristol and Jo Carol Knight, observed Martha continuously lying completely immobile and in her urine. Furthermore, at 11:00 p.m., Defendant Jamie Rinehart observed Martha vomiting while laying down. Despite Martha being incoherent, unaware, unable to ambulate, and vomiting while lying down, these individual Defendants failed to provide basic hygiene, necessary and adequate medical treatment, a physician to attend to Martha, and/or transfer Martha to a medical facility which could provide an appropriate level of care, or any care for that matter. The knowing actions, and/or failures to act, on the part of these individual Defendants posed a substantial risk of serious harm to Martha.

44.

From June 26, 2024, through July 1, 2024, the individual Defendants, as set forth hereinabove during their respective shifts, observed, heard and/or interacted with Martha. She showed obvious signs of distress, yet they failed to provide adequate or any medical care or assistance despite knowing that she was severely mentally ill, incontinent, immobile, vomiting, and not eating for days on end. The actions, and/or failures to act, on the part of the individual Defendants were performed knowing they posed a substantial risk of serious harm to Martha.

45.

By at least June 28, 2024, Martha was no longer ambulatory. Individual Defendants Jamie Rinehart, Brayden Ballard, Eli Langley, Joey Clark, Jerry Bristol, Jo Carol Knight, and Aaron Miller all allegedly made observations of Martha, or were aware of her status, from June 29, 2024

until July 1, 2024, and they undertook no actions to provide adequate or any medical care or assistance despite Martha being incoherent, unable to ambulate, lying on a concrete floor, not eating, and unclean. Defendant Aaron Miller finally called for an ambulance at 11:32 a.m. on July 1, 2024. The actions, and/or failures to act, on the part of these individual Defendants were performed knowing they posed a substantial risk of serious harm to Martha.

46.

When emergency responders arrived, they found Martha laying in her urine and stating she could not walk. She was immediately loaded onto a gurney and transferred to Baptist Memorial Hospital – Booneville.

47.

Upon arrival, the Emergency Department observed during Martha's physical exam that her extremities were cool and pale with dusky nail beds, she had no palpable pulses in either lower extremity, she had significant purpura on upper and lower extremities, she had skin tears and bruises to her extremities, and she had sacral decubitus (pressure ulcer and/or bedsore). She also had a white cell blood count of 22,000, indicating possible Rhabdomyolysis.

48.

After CT scans, it was discovered that Martha had mediastinal free air that may have resulted due to an assault and/or fall while at the Jail. Further, Martha suffered femoral artery occlusions in both lower extremities. The Emergency Department determined that Martha's extremities were likely past salvageability due to the extreme delay in medical treatment.

49.

Due to the femoral artery occlusions, Martha had to have both of her legs amputated, with the first amputations occurring above the knee, and subsequent amputations occurring up to her pelvis. She now will reside for the remainder of her life in a wheelchair, having lost both of her legs.

50.

During Martha's week-long detention at the Jail, the individual Defendants failed to provide her with her prescribed medications, basic hygienic care, and basic nutrition when it was known to the individual Defendants that she was not eating, was continuously urinating on herself, and was in a state of psychosis and manic behavior.

51.

During Martha's week-long detention at the Jail, the individual Defendants were aware that Martha was in physical pain, bruised and battered, unable to ambulate, and relegated to laying on a concrete floor for several days in her urine. They failed to provide her with necessary and adequate medical attention, a physician, and/or a transfer to a medical facility which could provide an appropriate level of care, or any care for that matter.

52.

During Martha's week-long detention at the Jail, the individual Defendants were aware that Martha had injuries and wounds to her backside and lower extremities, but they did not seek necessary and adequate medical attention, a physician, and/or a transfer to a medical facility which could provide an appropriate level of care, or any care for that matter.

53.

During Martha's week-long detention at the Jail, the individual Defendants mistreated Martha, mocked Martha, laughed at Martha, and assaulted Martha by stomping on her legs and dragging her to her cell. Martha's physical injuries included multiple bruises over her bilateral forearms, skin tears to her right forearm, skin tears to her feet, calves, and knees.

54.

During Martha's week-long detention at the Jail, the individual Defendants covered the only window to the cell in which Martha was held in order to prevent any person from seeing into the cell and prevent Martha from seeing outside of the cell.

55.

During Martha's week-long detention at the Jail, a reasonably prudent person would have recognized that Martha was in critical medical condition, as evidenced by her lack of mobility, urinary incontinence, hematemesis (vomiting blood), and lack of nutrition, among other obvious signs and symptoms.

56.

During Martha's week-long detention at the Jail, the individual Defendants, as reasonably prudent people would be, or should have been, aware that Martha was in apparent medical distress and that her health was rapidly deteriorating.

57.

Any reasonable person who would have observed Martha having injuries and wounds to her backside and lower extremities, not eating for approximately seven (7) days, being incontinent for approximately seven (7) days, being incoherent for approximately seven (7) days, being immobile for at least three (3) days and/or vomiting blood, would have known, both subjectively

and objectively, that she was in immediate need of medical intervention and to not provide immediate medical intervention was nothing less than being deliberately indifferent, or worse, toward Martha.

58.

The delay and/or denial in adequate medical services and care to Martha by the individual Defendants and/or Defendant Prentiss County, Mississippi, was in violation of her rights, privileges and immunities guaranteed by the Fourth Amendment and Fourteenth Amendment of the United States Constitution, giving rise to a cause of action pursuant to 42 U.S.C. § 1983.

59.

The acts of physical assault to Martha by the individual Defendants while she was detained in a holding cell and immobile, was an excessive and unnecessary use of force in conscious disregard of substantial risk of harm to the Plaintiff, giving rise to a cause of action pursuant to 42 U.S.C. § 1983.

60.

Defendant Prentiss County, Mississippi, failed to properly train the individual Defendants, failed to properly supervise them, failed to enact proper policy procedures regarding the use of force and/or provision of adequate medical treatment, negligently hired the individual Defendants and negligently retained the individual Defendants. And, the injuries sustained by Martha were the result of deficient hiring, training, supervision and retention by the Defendant Prentiss County, Mississippi.

## COUNT I - *Monell* Claim Under 42 U.S.C. § 1983

61.

Plaintiffs adopt and re-allege the above and foregoing paragraphs as if fully reproduced herein.

62.

The Defendant Prentiss County implemented and had in place a policy, practice, custom, or usage which prohibited jail staff from acting on their personal observations of an arrestee's, detainee's, or inmate's serious medical condition and medical distress to summon emergency medical assistance outside of the confines of the Prentiss County jail.

63.

The Defendant Prentiss County implemented and had in place a policy, practice, custom, or usage of failing to provide constitutionally adequate training to its jail staff in the recognition and proper handling of serious medical conditions of arrestees, detainees, and inmates at the Prentiss County jail.

64.

Martha's medical condition steadily deteriorated throughout her confinement until finally on July 1, 2024, emergency medical responders were dispatched to the Jail.

65.

Prior to the arrival of emergency medical responders on July 1, 2024, the individual Defendants, including but not limited to jail administrator, Defendant Joey Clark, were informed of and/or personally aware of Martha's immobility, urinary incontinence, physical wounds, uncleanliness, and steadily deteriorating mental health condition and medical condition and deliberately failed to provide necessary and adequate medical treatment; failed to provide Martha

with basic hygiene; failed to provide Martha with her medication; failed to ask for a physician to attend to Martha; and failed to transfer Martha to a medical facility which could provide an appropriate level of care, or any care for that matter. The actions, and/or failures to act, on the part of the individual Defendants were performed knowing they posed a substantial risk of serious harm to Martha.

66.

The Defendant Prentiss County implemented and had in place a policy, practice, custom, or usage of providing substandard and inadequate medical care to arrestees, detainees, and inmates with serious medical conditions, mental health conditions, and medical distress at the Prentiss County jail.

67.

The Defendant Prentiss County implemented and had in place a policy, practice, custom, or usage of failing to provide or inadequately providing necessary prescription medications to arrestees, detainees, and inmates with serious medical conditions and medical distress at the Prentiss County jail.

68.

The Defendant Prentiss County implemented and had in place a policy, practice, custom, or usage of failing to refer arrestees, detainees, and inmates at the Prentiss County jail with a serious medical condition or medical distress to a physician in order to properly examine, assess, diagnose, and treat the arrestee, detainee, or inmate with a serious medical condition or medical distress.

69.

The Defendant Prentiss County implemented and had in place a policy, practice, custom, or usage of failing to refer or transfer arrestees, detainees, and inmates at the Prentiss County jail with a serious medical condition or medical distress to medical facilities in order to provide appropriate and adequate medical care and treatment to arrestees, detainees, or inmates with a serious medical condition or medical distress.

70.

It was not until days after that Martha—bruised and battered, immobile, incontinent, lying in her urine, unclean, unfed and without nutrition and medication—was put on semi-regular observation. Still, she received no medical treatment or attention, but rather the individual Defendants simply notated "laying down" as her status. Thus, the individual Defendants were subjectively aware of her deteriorated physical condition, prolonged immobility, urinary incontinence, uncleanliness, lack of nutrition and medication, but took no action to provide her with adequate or any medical care, to refer her to a physician, or to refer her to a medical facility for treatment, despite their subjective awareness of her serious mental health condition, medical condition, and deteriorating physical health and substantial risks of serious harm the same posed to Martha Horton.

71.

The individual Defendants were subjectively aware of Martha being incoherent for days but likewise took no action to provide her with adequate or any medical care, to refer her to a physician, or to refer her to a medical facility for treatment despite their subjective awareness of her serious mental health condition, medical condition, and deteriorating physical health and substantial risks of serious harm the same posed to Martha Horton.

72.

The Defendant Prentiss County implemented and had in place a policy, practice, custom, and usage of denying arrestees, detainees, and inmates adequate care for an indefinite period of time with the seeming hope that they would heal themselves without medical intervention.

73.

This policy, practice, custom, and usage of the Defendant Prentiss County constituted an objectively unreasonable condition of confinement and manifested deliberate indifference to the medical needs and health of Martha and other arrestees, detainees, and inmates housed at the Prentiss County jail.

74.

Defendant Prentiss County and Defendants Tolar, Clark, and Rakestraw, individually and together, acted under color of state law to violate Martha's rights to due process and equal protection of the laws as protected by the Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Defendants wholly and completely failed to adopt and implement adequate policies and procedures to detect and respond to the obvious medical and mental health needs of arrestees, detainees, and inmates with mental health issues and serious medical conditions. During all times relevant to this *Complaint*, the policies, practices, or customs of Defendant Prentiss County and the jail staff at Prentiss County jail, with the approval or acquiescence of Defendants Tolar, Clark, and Rakestraw, were inadequate to protect and keep safe those incarcerated at Prentiss County jail as required by law. The failures of Defendants include, but are not limited to, failing to conduct appropriate mental health screenings; failing to administer prescription medications; failing to provide adequate medical care; failing to call a physician to attend to a serious medical condition; failing to adequately observe a detainee who is clearly in

distress; failing to adequately observe a detainee who is immobile for days; failing to request medical assistance when clearly needed.

75.

The above-described widespread practices, which were so well settled as to constitute the *de facto* policies of Defendants, were allowed to exist because policymakers with authority over Prentiss County jail, jail staff, and the people housed at Prentiss County jail exhibited deliberate indifference to the problems arising therefrom, thereby effectively ratifying the policies and failing to protect those housed at Prentiss County jail as required by law. The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Martha Horton to suffer the egregious and permanent injuries, i.e. the complete and total loss of her lower extremities and damages set forth herein.

76.

The acts and/or omissions of the Defendants described hereinabove in this *Complaint* were the sole proximate or proximate contributing cause of Terry Horton's loss of society and companionship, loss of enjoyment of life, loss of consortium and loss of household services, with his wife, Martha Horton.

**COUNT II - Failure to Train / Supervise Under 42 U.S.C. § 1983**

77.

Plaintiffs adopt and re-allege the above and foregoing paragraphs as if fully reproduced herein.

78.

Defendant Prentiss County and Defendants Tolar, Clark, and Rakestraw, individually, are also liable because the actions of the individual Defendants were carried out pursuant to an official

policy or custom of the Sheriff's Department and County, and said policy or custom was the moving force behind the deprivation of Martha Horton's constitutional rights.

79.

Defendant Prentiss County is also liable for the actions of Defendants Tolar, Clark and/or Rakestraw, who were together, or individually, the ultimate policymakers for the Department and who implemented the policy or custom at issue. Jail Administrator Joey Clark also played a direct role in the failure to care for Martha Horton, and his actions evidence deliberate indifference for the health, safety, and well-being of Martha Horton due to knowing the existence of substantial risks of serious harm to Martha Horton.

80.

Defendants Tolar, Clark, and/or Rakestraw failed to adequately train and supervise the Prentiss County jail staff regarding how to recognize serious medical conditions and provide appropriate medical attention. All of these actions constitute conscious deliberate indifference and reckless disregard for the health and well-being of Martha Horton, knowing the existence of substantial risks of serious harm to her, on the part of Defendant Prentiss County and on behalf of Defendants Tolar, Clark, and/or Rakestraw, in their official and individual capacities.

81.

The above-described practices, customs, and usages, which were so well settled as to constitute the *de facto* policy of Defendant Prentiss County, were allowed to exist because policymakers with authority over their acts exhibited deliberate indifference to the problem, thereby effectively ratifying it. The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and

proximately caused Martha Horton to suffer the egregious and permanent injuries, i.e. the complete and total loss of her lower extremities, and damages set forth herein.

82.

The acts and/or omissions of the Defendants described hereinabove in this Complaint were the sole proximate or proximate contributing cause of Terry Horton's loss of society and companionship, loss of enjoyment of life, loss of consortium and loss of household services, with his wife, Martha Horton.

**COUNT III – Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132**

83.

Plaintiffs adopt and re-allege the above and foregoing paragraphs as if fully reproduced herein.

84.

Martha Horton suffered from a long history of mental illness and had been diagnosed with schizophrenia, bipolar disorder, and depression, and Martha's conditions affected her daily living, her ability to work, and her relationship with her family.

85.

Prior to and at the time of confinement at the Jail, Terry Horton made it clear to Jail personnel, including the individual Defendants, that Martha had been suffering with suicidal thoughts as evidenced by his pursuit of a civil commitment. Further, during her confinement, Terry Horton had put the jail on notice of Martha's mental disabilities.

86.

Martha, as someone who suffered from bipolar disorder, schizophrenia, and depression with suicidal thoughts, qualified as a person with a disability under the Americans with Disabilities

Act, and her disability was known, or should have been known, considering the individual Defendants' knowledge of her civil commitment, communications from Terry Horton, communications from medical staff at Baptist Memorial Hospital – Booneville, and communications from CCSU, to Defendants. As a result, Defendant Prentiss County had an obligation to accommodate her disability by ensuring she received her prescription medications and housing her in a suicide-proof segregation cell that provided for constant monitoring. Defendant Prentiss County intentionally failed to accommodate Martha's disability through its implementation and placement of policies, practices, customs, or usages, and these failures led to, and were the sole proximate and/or proximate contributing cause, to the ultimate loss of both of Martha's legs and other damages suffered by her.

87.

The acts and/or omissions of Defendant Prentiss County described hereinabove in this *Complaint* were the sole proximate or proximate contributing cause of Terry Horton's loss of society and companionship, loss of enjoyment of life, loss of consortium and loss of household services, with his wife, Martha Horton.

**COUNT IV – Excessive Force Under 42 U.S.C. § 1983**

88.

Plaintiffs adopt and re-allege the above and foregoing paragraphs as if fully reproduced herein.

89.

The acts of physical assault by certain individual Defendants deprived Martha Horton of her due process rights, privileges and immunities guaranteed by the Fourteenth Amendment of the

United States Constitution, giving rise to a cause of action pursuant to 42 U.S.C. § 1983 and remedies pursuant to 42 U.S.C. § 1988.

90.

The acts and/or omissions by those individual Defendants constituted excessive force under to 42 U.S.C. § 1983 and their actions toward Martha Horton caused more than a *de minimis* injury, which resulted directly and only from the use of force that was excessive to the need, and the force was objectively unreasonable. Those individual Defendants' use of force against Martha Horton was malicious and sadistic, designed for the purpose of causing harm and injury and in conscious disregard of substantial risk of harm.

91.

Those individual Defendants used their authority to create a dangerous environment for Martha Horton and, in doing so, Defendants acted with deliberate indifference to the plight of Martha Horton. Those individual Defendants had an affirmative duty of care and protection due to the fact that they were acting through the State in their exercise of powers to restrain Martha Horton's freedom to act on her own behalf. Martha Horton had a substantive due process right to be free from State-occasioned bodily harm as inflicted by those individual Defendants.

92.

Those individual Defendants denied Martha Horton her substantive due process rights by acting with deliberate indifference to her rights and safety at a time when they knew, or should have known, that their actions would result in serious bodily harm to Martha Horton.

93.

The acts and/or omissions of those individual Defendants described hereinabove in this *Complaint* were the sole proximate or proximate contributing cause of Terry Horton's loss of

society and companionship, loss of enjoyment of life, loss of consortium and loss of household services, with his wife, Martha Horton.

**COUNT V – Denial/Delay of Medical Care, treatment and/or Services Exhibiting Deliberate Indifference for the Plaintiff's Basic Human Needs Under 42 U.S.C. § 1983**

94.

Plaintiffs adopt and re-allege the above and foregoing paragraphs as if fully reproduced herein.

95.

The individual Defendants' acts of omission and/or commission in denying and/or delaying Martha Horton's medical services, care and treatment for the severe physical injuries she suffered to her body and legs, and her mind, deprived Martha Horton of medical services, her basic human needs and constituted a violation of her rights, privileges and immunities guaranteed by the Fourteenth Amendment of the United States Constitution, giving rise to a cause of action pursuant to 42 U.S.C. § 1983.

96.

The acts and/or omissions by the individual Defendants in deliberately failing and/or refusing to provide necessary and adequate medical treatment, basic hygiene, nutrition, medication, a physician and/or transferal to a medical facility which could provide an appropriate level of care, constituted denial/delay of Martha Horton's basic human needs under 42 U.S.C. § 1983. The individual Defendants acts of omission and/or commission toward Martha Horton caused more than a *de minimis* injury, which resulted directly from the denial/delay of basic human needs, including necessary medical care and services, and was both objectively and subjectively unreasonable. There was no arguable or legitimate purpose served by denying/delaying medical services to Martha Horton as the same were obviously needed based on her immobility, urinary

incontinence, hematemesis, lack of nutrition, physical injuries, steadily deteriorating mental health condition and medical conditions.

97.

The individual Defendants knew that Martha Horton's immobility, urinary incontinence, hematemesis, lack of nutrition, physical injuries, steadily deteriorating mental health condition and medical conditions posed substantial risks of serious harm to Martha Horton if not treated and, nevertheless, they knowingly disregarded those substantial risks by failing to take reasonable measures to abate those risks, thereby exhibiting deliberate indifference for Martha Horton's basic human needs causing her harm and injury. The individual Defendants were obviously aware of those substantial risks as such risks would be recognized by any reasonable person, and, in fact, were recognized by Region IV staff, as well as emergency medical responders who found Martha Horton laying immobile in her own urine.

98.

The individual Defendants acted with deliberate indifference to the plight of Martha Horton. The individual Defendants had an affirmative duty of care and protection under the due process clause of the Fourteenth Amendment due to the fact that they were acting through the State in their exercise of powers to restrain Martha Horton's freedom to act on her own behalf. Martha Horton had a due process right to be free from State-occasioned bodily harm as inflicted by the individual Defendants.

99.

The individual Defendants denied Martha Horton her due process rights by acting with deliberate indifference to her rights and safety at a time when they knew, or should have known, that their actions would result in serious bodily harm to Martha Horton.

100.

The individual Defendants acts of omission and/or commission subjected Martha Horton to bodily injury and deprived her of her rights protected by the Constitution.

101.

The acts and/or omissions of the individual Defendants described hereinabove in this *Complaint* were the sole proximate or proximate contributing cause of Terry Horton's loss of society and companionship, loss of enjoyment of life, loss of consortium and loss of household services, with his wife, Martha Horton.

**COUNT VI – Violation of the Fourteenth Amendment Under 42 U.S.C. § 1983**

102.

Plaintiffs adopt and re-allege the above and foregoing paragraphs as if fully reproduced herein.

103.

As to certain acts of omission and/or commission by the individual Defendants and Defendant Prentiss County, at all times relevant to this civil action, the unconstitutional policies to which Martha Horton was subjected by the Defendant Prentiss County were objectively unreasonable and manifested deliberate indifference to the known serious medical condition of Martha Horton.

104.

The Defendant Prentiss County adopted constitutionally inadequate policies and procedures and failed to adopt constitutionally adequate policies and procedures to adequately monitor, detect, treat and respond to the known obvious serious medical needs of arrestees,

detainees, and inmates, while knowing that such policies and procedures posed substantial risks of serious harm to persons such as Martha Horton

105.

The Defendant Prentiss County failed to provide jail staff with even minimal training and authority to monitor, detect, and respond to the known obvious serious medical needs of arrestees, detainees, and inmates, while knowing that such policies and procedures posed substantial risks of serious harm to persons such as Martha Horton

106.

The Defendant Prentiss County maintained a policy, practice, custom or usage which authorized and/or mandated and/or condoned and/or ratified the denial of medical care to arrestees, detainees, and inmates, while knowing that such policies and procedures posed substantial risks of serious harm to persons such as Martha Horton.

107.

The aforementioned unconstitutional acts and omissions of the Defendant Prentiss County manifested deliberate indifference to the rights of Martha Horton and other arrestees, detainees, and inmates.

108.

As a direct and proximate result of the unconstitutional acts and omissions of the Defendant Prentiss County and the individual Defendants, these Defendants violated Martha Horton's clearly established constitutional rights guaranteed under the Due Process Clause of the Fourteenth Amendment by failing to give her adequate medical care, resulting in great suffering on Martha Horton's part and her preventable loss of both her legs.

109.

The Defendants knowingly failed or refused to provide Martha Horton with adequate or any medical care for her serious medical condition and mental health condition.

110.

The Defendants were subjectively aware of a substantial risk of serious harm to Martha Horton, but through their unconstitutional acts and omissions manifested deliberate indifference toward Martha Horton.

111.

The Defendants acts of omission and/or commission were undertaken with malice and/or reckless disregard for Martha Horton's constitutional rights, and as a result of the unjustified and unconstitutional conduct of the individual Defendants, Martha experienced pain, suffering, emotional distress, injury, and ultimately, the loss of both her legs.

112.

The Defendants' actions and omissions were the direct and proximate cause of the violations of Martha's constitutional rights, of her irreparable injury, and of the damages suffered by her and her family.

113.

The acts and/or omissions of the Defendants described hereinabove in this *Complaint* were the sole proximate or proximate contributing cause of Terry Horton's loss of society and companionship, loss of enjoyment of life, loss of consortium and loss of household services, with his wife, Martha Horton.

## DAMAGES

114.

Plaintiffs adopt and re-allege the above and foregoing paragraphs as if fully reproduced herein.

115.

As a result of the aforementioned acts of omission and/or commission, Defendants are liable for all elements of damages (actual, compensatory, punitive, etc.) arising from injuries to Plaintiffs, including:

a. past, present and future pain and suffering;

b. past, present and future medical expenses;

c. past, present and future loss of income;

d. past, present and future extreme mental anguish;

e. past, present and future extreme emotional distress;

f. past, present and future loss of enjoyment of life;

g. past, present and future loss of love, society and companionship;

h. past, present and future loss of consortium;

i. past, present and future loss of household services;

j. statutory damages pursuant to 42 U.S.C. § 1983;

k. attorneys' fees pursuant to 42 U.S.C. § 1988;

l. Punitive damages against the individual Defendants;

m. Reasonable costs and expenses; and

n. other damages to be shown during discovery and at trial.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment of, from and against the Defendants, jointly and severally, in an amount to be determined by a jury which will fairly and adequately compensate Plaintiffs for their injuries, damages, and losses including past, present and future damages addressed herein, plus all costs and fees of this litigation, post judgment interest and such other relief as may be appropriate under the circumstances.

**RESPECTFULLY SUBMITTED**, this the 10th day of July, 2025.

**MARTHA HORTON and TERRY HORTON,**

s/ L.N. Chandler Rogers____________________
**L.N. CHANDLER ROGERS, MSB #102543**
**ROGERS LAW GROUP, P.A.**
**P.O. BOX 1771**
**201 EAST BANKHEAD STREET**
**NEW ALBANY, MS 38652**
**TELEPHONE: (662) 538-5990**
**FACSIMILE: (662) 538-5997**
**EMAIL: chandler@rogerslawgroup.com**

s/ C. Reese Neely________________
**C. REESE NEELY, MSB #102543**
**ROGERS LAW GROUP, P.A.**
**P.O. BOX 1771**
**201 EAST BANKHEAD STREET**
**NEW ALBANY, MS 38652**
**TELEPHONE: (662) 538-5990**
**FACSIMILE: (662) 538-5997**
**EMAIL: reese@rogerslawgroup.com**

***Attorneys for Plaintiffs***